## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MAINE

_____

COURTHOUSE NEWS SERVICE, )
MTM ACQUISITION, INC. d/b/a )
*Portland Press Herald, Maine Sunday* )
*Telegram*, *Kennebec Journal*, and )
*Morning Sentinel*, and SJ ACQUISITION, )
INC. d/b/a *Sun Journal*, )
 )
        Plaintiffs, )
 )
v. )          Civil No. 1:21-cv-00040-NT
 )
JAMES T. GLESSNER, in his Official )
Capacity as State Court Administrator )
for the State of Maine Judicial Branch, and )
PETER SCHLECK, in his Official )      INJUNCTIVE RELIEF SOUGHT
Capacity as Clerk of the )
Penobscot County Superior Court, )
 )
        Defendants. )
_____)

## PLAINTIFFS' SECOND MOTION FOR PRELIMINARY INJUNCTION WITH INCORPORATED MEMORANDUM OF LAW

Sigmund D. Schutz
Jonathan S. Piper
sschutz@preti.com
Preti, Flaherty, Beliveau & Pachios, LLP
One City Center
Portland, ME 04101
(207) 791-3000

Jeffrey J. Pyle, *Pro hac vice*
Mass. BBO #647438
jpyle@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100

*Counsel for Plaintiffs*

17234681.1

INTRODUCTION

The Plaintiffs, news organizations that report on civil filings for the benefit of their readers and the public, move for the entry of a preliminary injunction pursuant to Fed. R. Civ. P. 65(a) enjoining Defendants' policy of denying press and public access to new, electronically filed civil complaints and other case-initiating documents in the Maine Superior Courts until after the clerk's office reviews, processes, and "enters" the documents into the state's case management system. Such "no-access-before-processing" policies violate the First Amendment right of the press to timely, contemporaneous access to civil court records.

The First Amendment guarantees the press and public the right to review and copy court records, including civil complaints. *Bernstein v. Bernstein, Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140-41 (2d Cir. 2016). This right "is an indispensable predicate to free expression about the workings of government." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785, 787 (9th Cir. 2014) ("*Planet I*"). The First Amendment requires courts to provide the press and the public access to judicial records as soon as they are filed; "even a one to two day delay impermissibly burdens the First Amendment." *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989); *see also Courthouse News Service v. Planet*, 947 F.3d 581, 585 (9th Cir. 2020) ("*Planet III*"); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) (noting "the importance of immediate access where a right to access is found"); *Courthouse News Service v. Planet*, No. 11-cv-8083, Amd. Judgment for Dec. Relief and Perm. Injunction, Doc. No. 270, p. 1 (C.D. Cal., Jan. 26, 2021) ("There is a qualified First Amendment right of timely access to newly filed civil complaints," and that right "attaches when new complaints are received by a court, rather than after they are 'processed,' – i.e. rather than after the performance of administrative tasks that follow the court's receipt of a new complaint.").

1

Since the filing of this action, the State of Maine has withdrawn a previously implemented rule that unconstitutionally delayed access to new e-filed complaints until three business days after the filing of a proof of service on a defendant. An injunction is still necessary, however, because the court has replaced one unconstitutional rule with another.

The new rule denies access to new complaints until after a clerk reviews them to determine whether they contain certain clerical and accounting-related defects, and then "enters" them into the case management system—a process that the Defendants have estimated will take between 4 and 24 "business hours." Like the withdrawn rule that tied public access to service of process, the revised rule is unconstitutional because it is not supported by, or narrowly tailored to address, any discernable governmental interest, let alone a compelling one. There is no justification for delaying public access to court records, even for a few hours, to conduct processing activities that have nothing to do with any interest that could possibly override the value of open court proceedings. The requested injunction would restore contemporaneous press and public access to Maine court records as the First Amendment requires.

## STATEMENT OF FACTS

Plaintiff MTM Acquisition, Inc. does business as the *Portland Press Herald, Maine Sunday Telegram, Kennebec Journal* and *Morning Sentinel* newspapers. Plaintiff SJ Acquisition, Inc. does business as the *Sun Journal* newspaper. The reporters for these newspapers review new civil complaints to identify cases that may be of interest to their readers. These parties will be collectively referred to herein as the "Maine Newspaper Plaintiffs."

Courthouse News Service ("Courthouse News" or "CNS") is a nationwide news organization that reports on civil court proceedings. (Second Declaration of William Girdner ("2d Girdner Dec."), ¶¶ 1-3.) CNS's 240 reporters and editors cover state and federal courts

nationwide. (*Id.*, ¶¶ 2, 4.) Among its more than 2,200 subscribers are law schools, law libraries, lawyers and law firms, many of them in New England. (*Id.*, ¶ 9.) Other media also subscribe, from the *Los Angeles Times* in the West to the *Boston Globe* in the East. (*Id.*)

Among CNS's publications are its New Litigation Reports, which feature original, staff-written reports of newsworthy new civil complaints within a particular jurisdiction, e-mailed to subscribers nightly. (2d Girdner Dec., ¶ 5.) CNS's website is updated daily with staff-written articles and columns, and has hundreds of thousands of readers per month. (*Id.,* ¶ 7.) CNS's reporting has been credited as the source for stories by a wide range of news outlets, including daily newspapers (e.g., *The New York Times*, *The Wall Street Journal*, and *The Boston Globe*); magazines (e.g., *New York* Magazine, *Forbes*, *U.S. News and World Report*); television news (e.g., ABC News, Fox News); online-only publications (e.g., The Daily Beast, Politico); and radio (e.g., NPR). (*Id.*, ¶ 8.) For its reporting, CNS's reporters regularly review new civil complaints and other case-initiating documents filed in state courts. (2d Girdner Dec., ¶ 11.)

On November 30, 2020, the Maine judicial branch began implementing electronic filing in certain state courts, including the Penobscot County Superior Court. (*See generally,* https://efilemaine.gov/activeCourt.html). On the same date, the Maine Supreme Judicial Court enacted amendments to its Rules of Electronic Court Systems ("RECS"), to be effective December 15, 2020. (Motion for Preliminary Injunction, Doc. No. 3, Ex. A). The RECS delayed access to court records "until three business days after the court clerk has accepted the submissions of both the case initiating documents and proof of service of process on at least one defendant." (*Id.*) As a result, CNS was unable to obtain access to newly filed complaints in the Penobscot County Superior Court—the first court of general jurisdiction to implement mandatory e-filing—until days or weeks after filing. (*See* Aff. of Brenda Herrling, Doc. No. 5).

On February 22, 2021, after Plaintiffs filed their complaint and motion for a preliminary injunction, the Maine court system revised its rules. The newly amended rule 4(A)(1) provides that "[u]nless prohibited by law or by court order, a court record in a civil case is accessible by the public upon entry into the electronic case file." (**Exhibit 1**, Feb 22, 2021 Revisions to Rules of Electronic Court Systems at 2). The "entry" of a record into the electronic case file is distinct from and takes place *after* a record is filed with the court. The rules provide that the "file date" of a complaint is "the day it is submitted." RECS 35(B) (**Exhibit 2**). The file date is the critical case-initiating event. "For a document electronically submitted, the file date will apply for purposes of meeting the statute of limitations or any other filing deadlines, even if the document is accepted by the clerk on a later date . . . ." *Id.*

By contrast, according to the new amendment to the rules, the "entry" of a document that is "submitted for electronic filing" cannot occur until "acceptance," which is "after a court clerk has determined that the submission complies with M.R. Civ. P. 5(f) and Rule 34 of these rules." (Ex. 1). As set forth below, those rules list a number of clerical and accounting-related requirements. "Once the document is entered, that electronic filing becomes part of the electronic case file." (*Id.*).

The new rule does not specify any time period within which the clerk's office must complete its review, acceptance, and "entry" of new electronically filed complaints. However, since the e-filing system was activated in December, the court system has sent notices by e-mail to electronic filers advising them they should "allow up to 24 business hours," or three business days, "for clerk office processing" of any document. (Am. Compl., ¶ 36; Declaration of Jean Charron ("Charron Dec."), ¶ 4). As of February 25, 2021, this notice was still being sent to filers. (*Id.*)

After the Plaintiffs filed their Amended Complaint—which cited the "24 business hour" notification—Defendants on March 1, 2021 filed an affidavit of Defendant James T. Glessner stating that the Maine Supreme Judicial Court "expects" that the "entry" process "will be completed within four business hours," barring "exceptional" circumstances. (Affidavit of James T. Glessner, Doc. No. 16-1, at ¶ 12). The affidavit does not indicate what this expectation is based on, nor does it offer any basis for evaluating whether the expectation is likely to be met.

The Penobscot County Superior Court has been processing electronic complaints for more than three full months, since electronic filing went into effect in December 2020. However, as set forth in the Second Declaration of Brenda Herrling ("2d Herrling Dec."), Courthouse News's reporter; the Declaration of Adam Angione, its Northeast Bureau Chief ("Angione Dec."), and the Declaration of Jean Charron, the court's processing time has frequently extended a great deal longer than four business hours. For example, the case of *Freeman v. Brann*, PENSC-CIV-2021-00025, was electronically filed at 3:53 p.m. on Wednesday, March 10, 2021. Nearly 24 hours (or 7.5 "business hours") later, at 3:30 on Thursday, March 11, the Penobscot County Superior Court assistant clerk told Ms. Herrling that she could not provide a copy of the complaint because it had not been reviewed and "processed." (2d Herrling Dec., ¶ 9). As of the evening of the same day, the case also did not appear on the court's online docket system. (Angione Dec., ¶ 5). Access to other complaints has been similarly delayed. (*Id.*, ¶¶ 4-5; 2d Herrling Dec., ¶ 9).

Even if the entry process were completed within four business hours in every case, that would still allow for significant delays of access to court records. The business hours of the Penobscot County Superior Court are 8:00 a.m. to 4:00 p.m.[1] Thus, a complaint that is filed at

---

[1] See https://www.courts.maine.gov/courts/superior/penobscot-sc.html (last visited March 10, 2021).

17234681.1

1:00 p.m. on a Tuesday may not be available until 9:00 a.m. the following morning. Any case filed after 4:00 would likewise be unavailable until the following afternoon. A complaint filed at 12:30 p.m. on a Friday may not be available until almost three full days later, at 8:30 Monday morning. A complaint filed early on a Friday afternoon before a three-day weekend could be unavailable for nearly four days.

None of these delays are necessary. The court system's stated reason for delaying access until after processing is to permit clerks to determine whether a filed document complies with Rule 5(f) of the Maine Rules of Civil Procedure and Rule 34 of the Maine Rules of Electronic Court Systems. (Ex. 1). These rules pertain solely to clerical and accounting issues. Rule 5(f), as it pertains to complaints, provides that they must be signed, and must be accompanied by a filing fee and summary sheet. M.R.Civ. P. 5(f).[2] RECS 34 requires that electronically filed documents (1) be in the form of a PDF, (2) be converted to PDF rather than being scanned, and (3) not exceed 50 megabytes. (Ex. 2). Documents over 50 megabytes must be "broken down and submitted as separate files that do not exceed 50 megabytes each," along with descriptions of each part of the document. Further,

> [a]ll documents must be submitted individually as separate files with the same submission. The filer must include in the 'Filing Description' field a description that clearly identifies each document. For each separate document submitted, the detailed caption title, filing description in the EFS, and .pdf file title must be substantially identical. . . .

> All electronic documents shall be self-contained and must not contain live links to external papers or websites.

(Ex. 2, RECS 34).

---

[2] "Filings that are received but which are not signed, or are not accompanied at the time of filing by a legally required element, including but not limited to, a filing fee . . . or summary sheet, or, if filed by an attorney, do not have the attorney's Maine Bar Registration Number, shall be returned by the clerk as incomplete." M.R.Civ. P. 5(f).

17234681.1

The Defendants have not explained why public access to complaints must be delayed while the clerk's office checks for compliance with these ministerial requirements. Nor have Defendants explained how the court system, or indeed anyone, would be harmed if court records that, for example, fail to comply with the technical PDF formatting requirements or contain live hyperlinks were disclosed to the press and public.

The Maine judicial system has contracted with Tyler Technologies, Inc., a software vendor, to handle electronic filing and case management in the Maine courts. Tyler has written and installed software for other court systems that provides online press access to new public filings at the time of filing—that is, at the time the court receives the record. (2d Girdner Dec., ¶¶ 17-23). It has installed such "press review queue" software in county court systems in Georgia and California at no cost to its court-system customers. (*Id.* ¶ 23).

## ARGUMENT

To obtain a preliminary injunction, the moving party must demonstrate that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20-21 (2008). This analysis is simplified in First Amendment cases, because "irreparable injury is presumed upon a determination that the movants are likely to prevail on [a] First Amendment claim." *Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 11 (1st Cir. 2012). This presumption flows from the well-established rule that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). As such, "[a] plaintiff who has shown a likelihood of success on the merits of a First Amendment claim has satisfied the irreparable injury component of the preliminary injunction analysis as

well, given the loss of First Amendment freedoms." *Comcast of Maine/New Hampshire, Inc. v. Mills*, 435 F. Supp. 3d 228, 250 (D. Me. 2019); *Courthouse News Serv. v. Jackson*, No. CIV A H-09-1844, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) (applying presumption of irreparable harm and enjoining delays of access to complaints). Moreover, "once a governmental regulation is shown to impinge upon basic First Amendment rights, the burden falls on the government to show the validity of its asserted interest and the absence of less intrusive alternatives." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 658 (1981).

Plaintiffs have a clear likelihood of success. The Maine rule operates in blanket fashion to seal filed documents to which there is a First Amendment right of access without advancing any discernable state interest, compelling or otherwise. That being so, the rule is not narrowly tailored to a compelling state interest as the First Amendment requires. Accordingly, the Court should enjoin defendants from continuing to enforce the rule pending final judgment.

## I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

The press and the public have a fundamental First Amendment right of access to court records, including civil complaints, that attaches once a document is filed with a court. That right can only be overcome with a showing of a sufficiently important governmental interest in closure, and narrow tailoring of any closure to address the concern the state has identified. Defendants can satisfy neither requirement. Plaintiffs therefore have a strong likelihood of success on the merits of their claims.

### A.     There is a Fundamental First Amendment Right of Access to Civil Proceedings and Records, Including Complaints.

The First Amendment to the U.S. Constitution, made applicable to the states via the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. Amend. I. "[A] major purpose of [the First] Amendment

was to protect the free discussion of governmental affairs." *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 604 (1982) (citations omitted), quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966). Consistent with this purpose, in a series of seminal cases beginning with *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. at 555 (1980), the Supreme Court held that the First Amendment requires courts to provide the public and the press access to their proceedings and records. "Free speech carries with it some freedom to listen," and freedom of speech and freedom of the press "would lose much meaning if access to . . . the trial could . . . be foreclosed arbitrarily." *Id.* at 576–577.

In its landmark 1982 decision in *Globe Newspaper Co.*, 457 U.S. at 606-08, the Supreme Court held that a Massachusetts statute requiring trial courts to exclude the public from criminal proceedings during a particular type of testimony was unconstitutional. While a compelling interest might exist to justify closure in some cases, the Court held that such determinations must be made on a "case-by-case basis" in accordance with the strict scrutiny test compelled by the First Amendment. *Id*. at 606-08; *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986) ("*Press-Enterprise II*") (holding that right of access applied to preliminary hearings).

The courts have held that press access to court proceedings is particularly important because of the role it plays in informing the public. "In a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press," which "bring[s] to bear the beneficial effects of public scrutiny upon the administration of justice." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491–92 (1975). "The free press is the guardian of the public interest, and the independent judiciary is the guardian of the free press. Thus, courts have a duty to conduct a thorough and searching review of any attempt to restrict public access." *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012).

The Supreme Court initially recognized the First Amendment right of access in the context of criminal proceedings, *see, e.g., Richmond Newspapers, Inc.*, 448 U.S. 555, and has not yet had occasion to decide whether it extends to civil proceedings. However, "every circuit to consider the issue has uniformly concluded that the right applies to both civil and criminal proceedings." *Planet III*, 947 F.3d at 590, citing *Dhiab v. Trump*, 852 F.3d 1087, 1099 (D.C. Cir. 2017) (Rogers, J., concurring in part and concurring in the judgment) (collecting cases); *In re Continental Illinois Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (finding right of access by press to litigation committee reports in shareholder derivative suits); *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 305 (2d Cir. 2012) (finding right of access to administrative civil infraction hearings); *Lugosch*, 435 F.3d at 119-20 (summary judgment papers are subject to the "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents."); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984) ("We hold that the First Amendment does secure a right of access to civil proceedings."); *Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n*, 710 F.2d 1165, 1177 (6th Cir. 1983) (First Amendment limits judicial discretion to seal documents in civil case).

In determining whether a First Amendment right of access attaches to a particular record or proceeding, "courts should consider two complementary considerations: 'whether [they] have historically been open to the press and general public' (the 'experience' prong), and 'whether public access plays a significant positive role in the functioning of the particular process in question' (the 'logic' prong)." *United States v. Kravetz*, 706 F.3d 47, 53–54 (1st Cir. 2013), quoting *Press-Enterprise II*, 478 U.S. at 8–9. Applying this test, courts have held that the First Amendment right extends to civil complaints, because they have historically been open and they activate the court's jurisdiction and define the relevant dispute. *Planet III*, 947 F.3d at 591 ("a

qualified First Amendment right of access extends to timely access to newly filed civil complaints."); *Courthouse News Service v. Planet*, No. 11-cv-8083, Amended Judgment for Declaratory Relief and Permanent Injunction, Doc. No. 270, p. 1 (C.D. Cal., Jan. 26, 2021) (striking down clerk's no-access-before-processing policy) (copy attached as **Exhibit 3**) ("There is a qualified First Amendment right of timely access to newly filed civil complaints, including their associated exhibits," and "[t]his qualified right of timely access attaches when new complaints are received by a court, rather than after they are 'processed' -- i.e., rather than after the performance of administrative tasks that follow the court's receipt of a new complaint."); *Courthouse News v. Schaefer*, No. 18-cv-391, Opinion and Order, Doc. No. 102 (E.D. Va., February 21, 2020) ("[T]he press and public ... enjoy a qualified right of access to newly-filed civil complaints contemporaneous with the filing of the complaint.") (**Exhibit 4**).

A complaint "is the cornerstone of every case, the very architecture of the lawsuit. . . .  It is the complaint that invokes the powers of the court, states the causes of action, and prays for relief." *Bernstein*, 814 F.3d at 140, 142. *Accord, Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 2016 WL 1071107, *8 (S.D.N.Y. Mar. 18, 2016) ("A complaint is the quintessential judicial document. A complaint is the invocation of the power of one branch of government to resolve an otherwise-private dispute."). When a complaint is withheld, it "leaves the public unaware that a claim has been leveled and that state power has been invoked – and public resources spent – in an effort to resolve the dispute." *Bernstein*, 814 F.3d at 141; *accord Bernstein*, 2016 WL 1071107 at *9 ("When a complaint is filed, and the authority of [the government] is thereby invoked, even if only as a threat to induce settlement, the American people have a right to know that the plaintiff has involved their power to achieve [the plaintiff's] personal ends."). Nor is a judicial ruling required for the right to attach. "The First Amendment

secures a right of timely access to publicly available civil complaints that arises before any

judicial action upon them." *Planet III*, 947 F.3d at 600.

### B.    The First Amendment Right of Access Attaches as Soon as a Record is Received by the Court.

The First Amendment contemplates a right, not of eventual access to court records, but of

*contemporaneous* access—before they become yesterday's news. In *Globe Newspaper Co v.*

*Pokaski,* 868 F.2d 497 (1989), the First Circuit held that a Massachusetts statute automatically

sealing records of criminal cases ending with an acquittal or a finding of no probable cause

violated the First Amendment. The state, the court held, had failed to satisfy the "compelling

interest/least restrictive means test," which required showing first "that the objectives of the

statute [are] sufficiently important; second, the means chosen by the state . . . effectively promote

the statute's objectives; and third, the statute [does] not infringe upon the First Amendment any

more than is necessary to promote those objectives." *Id.* at 505. It was immaterial that the press

could "initiate an administrative or legal action to obtain the records," because requiring a

motion to unseal "delays access to news, and delay burdens the First Amendment." *Id*., at 507.

Even though "the delay in the past often has been minimal, at times as little as a day," the

Massachusetts statute did not "require that all requests be processed within a certain time frame,"

and in any event "even a one to two day delay impermissibly burdens the First Amendment." *Id.*

*See also In re Providence J. Co., Inc.*, 293 F.3d 1, 11 (1st Cir. 2002) ("[m]otions and objections

filed in the District of Rhode Island typically become part of the case file (and, thus, available for

public inspection) at the moment they are filed in the clerk's office.").

Other circuits have likewise held that the First Amendment requires contemporaneous

access to filed court records. *Doe v. Public Citizen,* 749 F.3d 246, 272 (4th Cir. 2014) ("Because

the public benefits attendant with open proceedings are compromised by delayed disclosure of

documents, we … emphasize that the public and press generally have a contemporaneous right of access to court documents"); *Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1147 (9th Cir. 1983) (withholding new filings for 48 hours was "a total restraint on the public's first amendment right of access even though the restraint is limited in time"); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir. 1994) ("In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous").

Access must be contemporaneous, the courts reason, because it is only while cases are still "current news that the public's attention can be commanded." *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 250 (7th Cir. 1975); *accord Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 561 (1976) ("the element of time is not unimportant" in news reporting); *In re Charlotte Observer*, 882 F.2d 850, 856 (4th Cir. 1989) (delaying access "unduly minimizes, if it does not entirely overlook, the value of 'openness' itself, a value which is threatened whenever immediate access … is denied, whatever provision is made for later public disclosure."). An access right that stems from the right to "free discussion of governmental affairs" would mean little if it did not permit discussion of current events as they unfold. *Globe Newspaper Co.*, 457 U.S. at 604.

Accordingly, in a number of cases brought by Courthouse News, federal courts have issued injunctions precluding court clerks from withholding filed civil complaints from public and press review, even for a short time following the courts' receipt of the documents. *Courthouse News Serv. v. Tingling*, Civil Action No. 1:16-cv-08742-ER, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016), and Preliminary Injunction Hearing & Order Reporter's Transcript ("Tingling Order"), pp. 49-53 (**Exhibit 5**) (granting CNS preliminary injunction where one-third of complaints were withheld from public access for a day or more, as "there is of course, an

13

important First Amendment interest in providing timely access to new case-initiating documents."); *Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) (granting preliminary injunction where Houston court clerk's practice of delaying access to new civil petitions until after the completion of clerical duties resulted in a 24-to-72 business hour delay in access, which was "effectively an access denial and is therefore, unconstitutional."); *Courthouse News Service v. Planet*, No. 11-cv-8083, Amended Judgment, Doc. No. 270, p. 1 (Ex. 3) (C.D. Cal., Jan. 26, 2021) (amending judgment for declaratory and injunctive relief, declaring a qualified First Amendment right to access new complaints "on receipt," and enjoining the clerk from denying access to new complaints until after they are processed, regardless of whether the complaints are filed in paper or electronic form).

The Defendants' policy of denying access to complaints and other judicial records until after clerk office processing is the sort of "blanket prohibition on the disclosure of records" that "implicates the First Amendment," even though "the sealing is not permanent." *Pokaski*, 868 F.2d at 505-06. Like the procedure for unsealing criminal court files in *Pokaski,* the Maine rule "does not require that all [complaints] be processed within a certain time frame." *Id.* The state recently estimated the process would take up to 24 business hours, or three business days, to complete, (Charron Dec., ¶¶ 4-6), but even under the Defendants' more optimistic estimate of four business hours, complaints will routinely be withheld until the next business day, especially when filed in the afternoon. "[E]ven a one to two day delay impermissibly burdens the First Amendment," because the access right attaches upon receipt. *Id.* (emphasis supplied). *See also In re Providence J. Co., Inc.*, 293 F.3d at 11.

14

**C.     The Maine Rule Does Not Pass Strict Scrutiny Because It Is Not Supported by a Compelling Governmental Interest, Nor Is It Narrowly Tailored.**

To overcome the "presumption … of immediate public access," *Lugosch*, 435 F.3d at 126, the Defendants must show "that the objectives of the [rule are] sufficiently important" and that the rule "[does] not infringe upon the First Amendment any more than is necessary to promote those objectives." *Pokaski,* 868 F.2d at 505. Any "justification in denying access must be a weighty one," and denials "must be rare and only for cause shown." *New York Civil Lib. Union*, 684 F.3d at 304. The proponent of withholding access bears the burden to make this showing. *Bernstein*, 814 F.3d at 144; *Lugosch*, 435 F.3d at 126.

**1.     No Compelling Interest Justifies Defendants' Policy.**

The paradigmatic example of the kind of compelling governmental interest that can justify closure of court records or proceedings is the preservation of a criminal defendant's right to a fair trial. *See Press-Enterprise I,* 464 U.S. at 511 (accused's right to a fair jury selection process was compelling interest); *In re Providence J. Co., Inc*., 293 F.3d at 14 (fair trial rights of public corruption defendant in high-profile case were compelling, and district court's specific findings showing threat to that right were reasonable). But even a claim that the fair trial right is at stake does not necessarily justify closure. Rather, the court "must, on a case-specific basis, construct a balance" based "on the assumption that restrictions on access to presumptively public judicial documents should be imposed only if a substantial likelihood exists that the accused's right to a fair trial will otherwise be prejudiced." *Id.*, citing *Press–Enterprise II*, 478 U.S. at 14. "[T]his inquiry requires specific findings; the First Amendment right of public access is too precious to be foreclosed by conclusory assertions or unsupported speculation." *Id.* at 13.

Here, the Defendants have no compelling governmental interest sufficient to delay access to complaints on a blanket basis. The only stated basis for the rule is to permit clerks to check

newly filed complaints for such things as the presence of a signature, payment of a filing fee, inclusion of a Maine State Bar number, proper PDF format, proper file naming conventions, and the absence of hyperlinks. (Exhibit 1, RECS 2; Exhibit 2, RECS 34; M.R. Civ. P. 5(f)). This clerical and accounting review is perfectly appropriate, but there is no reason why the public should be denied access to new complaints for any length of time until it has been completed. There is no "overriding interest" in doing this clerical and accounting review *before* a complaint is made public that outweighs the value of openness.[3] *Press-Enterprise I*, 464 U.S. at 509. There is, in short, no logical connection between the asserted governmental interest and secrecy.

---

[3] Instead of articulating an overriding interest, Defendants attempt to redefine what it means to "file" a document. The Defendants assert that before a clerk affirmatively adds a record to an "electronic case file," documents "submitted on efile Maine are the equivalent of paper documents in the hands of a litigant at the clerk's office window." (Memo in Support of Mot. to Dismiss, Doc. No. 16, at 12). This is incorrect. In fact, Maine's "Electronic Filing System," or "EFS," acts as the intake clerk, and once the record is submitted to the EFS, it is effectively in the hands of the clerk's office.

The EFS requires the filer, before submission, to enter information establishing jurisdiction, case type, parties, and document type. (Charron Dec., ¶ 7). The filer must then upload the document, choose a security level (public or non-public), and enter a required payment calculated by the program, which, for a new complaint, includes a case initiation fee and "convenience" fee. (*Id.*). The filer is also required to check a box certifying that non-public information, including private identifiers, has been omitted. (*Id.*).

RECS 35(B) provides that a document is deemed filed for statute of limitations and other timeliness purposes at this stage—when the document is submitted to the EFS—*before* the processing/docketing clerk reviews it and enters it into the court's case management system. (Exhibit 2, RECS 35(B)).

> For a document that is electronically submitted between 12:00:00 a.m. and 11:59:59 p.m. in the time zone where the courthouse is located on Monday through Friday, the 'file date' will be the day it is submitted. If a document is submitted on a Saturday, Sunday, or legal holiday, the file date will be the next business day. For any questions of timeliness, <u>the time and date registered by the EFS will be determinative</u>.

(Exhibit 2, RECS 35(B) (emphasis supplied)). Thus, the Plaintiffs do not "allege a right to peruse documents regardless of whether those documents are ultimately filed with the court," as Defendants contend. (Memo in Support of Mot. to Dismiss, Doc. No. 16, at 12). Rather, a document is deemed filed when the court receives it, whenever the clerk later "enters" it into a case management system. And, even for the small number of filed documents that are returned based on ministerial errors, such as an omitted bar number, the rules permit the filer to correct the filing within four days and thereby automatically preserve the timeliness of the filing. (Ex. 2, RECS 35(D)-(E)).

Defendants have asserted that providing access to civil complaints before clerk processing will somehow implicate the "privacy" interests of parties. (Memo in Support of Motion to Dismiss, Doc. No. 16, at 14 (asserting that "[a]ny minimal delay under the amended RECS Rules is amply justified by . . . the need to protect the privacy of those who are the subject of legal documents that are not yet, and may never be, part of the court's records.")). However, the rules at issue have nothing to do with privacy. They do not direct clerks to review records for "privacy" interests; to the contrary, "[i]t is the responsibility of the filing party," not the clerk, "to ensure that sealed, impounded, or nonpublic cases, court records, data, documents, and information are redacted before submission." (Exhibit 2, RECS 12). Moreover, the e-filing system requires a filer to certify that private information has been redacted. (Charron Dec., ¶ 7). Privacy goes unmentioned in the rules pertaining to clerk processing and in their accompanying Advisory Notes. *See* Ex 1. Defendants do not explain why access should be delayed based on "privacy" concerns while a review of issues unrelated to privacy is conducted.

### 2.    The Rule is Not Narrowly Tailored.

Even if the automatic sealing of complaints until clerk processing were held to effectively serve a compelling interest, the rule is not "narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13–14 (internal quotation omitted); *Pokaski,* 868 F.2d at 505-07 (statutory "blanket prohibition on the disclosure of public records" where defendant was found not guilty was unconstitutional; state could "achieve its objective by less restrictive means"); *Matter of New York Times Co.,* 828 F.2d 110, 116 (2d Cir. 1987) (rejecting the "wholesale sealing" of motion papers to protect the privacy rights of defendants and third parties and remanding the case to determine whether "limited redaction" was appropriate); *Globe Newspaper Co.*, 457 U.S. at 607-09 (while interests in protecting minor victims and encouraging

17234681.1

testimony were compelling, they "did not justify a *mandatory* closure rule, for it is clear that the circumstances of the particular case may affect the significance of the interest"); *Associated Press*, 705 F.2d at 1146 (order presumptively sealing documents in criminal case for 48 hours after filing to protect fair trial rights was not narrowly tailored). Even if it were necessary for the court to review new complaints for simple clerical or accounting errors before making them public, there is no reason why it should require a full 4 to 24 business hours to do so.

Sealing new complaints for between 4 and 24 business hours means, in practice, that some complaints will be withheld until the next business day or, if a weekend intervenes, longer. In today's media environment, that is the equivalent of one or more news cycles. The Court in the *Tingling* case, attached as Exhibit 5, held that a similar no-access-before-processing policy that resulted in one-third of newly filed complaints being unavailable until the next day (and sometimes later) violated the First Amendment. (Ex. 5 at 2-3 (noting delays until next day), and 52 (court "failed to meet its burden of demonstrating that its policy of refusing to provide the public and press access to newly filed complaints until after they are reviewed and logged is either essential to preserve higher values or is narrowly tailored to serve that interest.")). The delay the rule creates is greater than necessary to deal with any objective it advances.

## II. PLAINTIFFS, THEIR READERS, AND THE PUBLIC WILL BE IRREPARABLY HARMED ABSENT INJUNCTIVE RELIEF.

The First Circuit has held that "irreparable injury is presumed upon a determination that the movants are likely to prevail on [a] First Amendment claim," *Sindicato Puertorriqueno de Trabajadores*, 699 F.3d at 11, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373; *Comcast of Maine/New Hampshire, Inc.*, 435 F. Supp. 3d at 250 ("[a] plaintiff who has shown a likelihood of success on the merits of a First Amendment claim has satisfied the irreparable

18

injury component of the preliminary injunction analysis as well, given the loss of First Amendment freedoms."). Irreparable injury should therefore be presumed here.

In addition, Plaintiffs have shown that they will in fact suffer irreparable injury, because the enforcement of the rule diminishes the value of CNS's reports to its subscribers and its reputation as a news provider, (2d Girdner Dec. ¶ 10), leading to a loss of goodwill. *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 908 (2d Cir. 1990) (finding irreparable harm to media's reputation and goodwill if unable to publish photograph); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ("injunctive relief is appropriate where it would be 'very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come'"). As for the Maine Newspaper Plaintiffs, the Rule irreparably prevents them from informing the public about new court filings for a significant period of time.

## III.   THE BALANCE OF EQUITIES TIPS DECIDEDLY IN FAVOR OF PLAINTIFFS.

In contrast to the irreparable injury Plaintiffs would suffer if injunctive relief is denied, Defendants would suffer no cognizable harm or inconvenience as a result of a preliminary injunction. An injunction would simply require Maine courts to provide timely access to public judicial records, as is constitutionally required. Indeed, the requested injunction would only require Maine courts to treat electronically filed complaints in the same manner as they currently do paper complaints: public upon receipt. As the court found in *Tingling*, "the balance of hardships tips in CNS's favor" because "CNS will be denied its First Amendment right of access to new case-initiating documents unless the Court issues this preliminary injunction while the clerk has alternative constitutional ways to address" its concerns. (Exhibit 5, p. 53.) The

Southern District of Texas ruled similarly in *Jackson*, 2009 WL 2163609 at *5. Judicial direction would also provide salutary clarity and guidance to Defendants.

## IV.    INJUNCTIVE RELIEF WOULD SERVE THE PUBLIC INTEREST.

Here, as in *Tingling, Jackson,* and *Planet*, injunctive relief would serve the public interest" because there is "an important First Amendment interest in providing timely access to new case-initiating documents." (Ex. 5, at 53; *accord Jackson*, 2009 WL 2163609, at *5.) "In a society in which each individual has but limited time and resources with which to observe at first hand the operations of the government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations … a public benefit is performed by the reporting of the true contents of [public court records] by the media." *Cox Broad. Corp.,* 420 U.S. at 491, 495. "If CNS' [and the Maine Newspaper Plaintiffs'] protected expression [about new litigation] is delayed … then the expression of the newspapers, lawyers, libraries and others who rely on [them] for information will also be stifled." *Planet I*, 750 F.3d at 788.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Injunction and enjoin Defendants from enforcing so much of the Maine Rules of Electronic Court Systems as deny press and public access to electronically filed court records until after the "entry" of the records into the electronic case file, and further enjoining the Defendants and anyone working at their behest from restricting public access to records of new civil actions, including but not limited to newly filed civil complaints, except in those instances where a court has ordered the sealing of a complaint, and further requiring Defendants to make records relating to new civil actions available to the public upon their receipt.

17234681.1

Dated at Portland, Maine this 17th day of March, 2021

Respectfully submitted,

COURTHOUSE NEWS SERVICE,
MTM ACQUISITION, INC., AND
SJ ACQUISITION, INC.,

By their Attorneys,

/s/ *Sigmund D. Schutz*
Sigmund D. Schutz
Jonathan S. Piper
sschutz@preti.com
Preti, Flaherty, Beliveau & Pachios, LLP
One City Center
Portland, ME 04101
(207) 791-3000

Jeffrey J. Pyle, *Pro hac vice*
Mass. BBO #647438
jpyle@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100

17234681.1