## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| BANGOR PUBLISHING COMPANY, | ) ) | |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | Docket No. 1:21-cv-00040-NT |
| JAMES T. GLESSNER et al., | ) ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS AND
## PLAINTIFFS' SECOND MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Courthouse News Service, MTM Acquisition, Inc., and SJ Acquisition, Inc. ("**Courthouse News Plaintiffs**") and Plaintiff-Intervenor Bangor Publishing Company (collectively, "**Plaintiffs**") filed complaints (ECF Nos. 14–15) seeking declaratory and injunctive relief that would allow them access to civil complaints the moment they are received by Maine's state courts. Along with their respective complaints, the Plaintiffs filed motions seeking a preliminary injunction (ECF Nos. 23, 25). The Defendants, the State Court Administrator for the State of Maine Judicial Branch and the Clerk of the Penobscot County Superior Court, ("**Defendants**") oppose the motions for injunctive relief (ECF No. 30) and have moved to dismiss the Plaintiffs' complaints (ECF Nos. 16, 22). For the reasons set forth

below, I grant the Defendants' motions to dismiss and deny as moot the Plaintiffs' motions for preliminary injunction.

## BACKGROUND

### I.    The Maine Courts' Implementation of Electronic Filing Rules and the Courthouse News Plaintiffs' First Challenge to the Rules

In 2020, the Maine Supreme Judicial Court ("**SJC**") initiated a pilot e-filing project for the Maine state court system in Penobscot County Superior Court, in the Bangor District Court, and for the Business and Consumer Docket. Decl. of James T. Glessner ("**Glessner Decl.**") ¶¶ 5–6 (ECF No. 16-1). In conjunction with the e-filing pilot project, the SJC adopted the Maine Rules of Electronic Court System ("**RECS**"), which have been amended several times since their adoption in August of 2020. Glessner Decl. ¶¶ 4, 8. According to their preamble, the RECS "are intended to facilitate public access to and use of the courts in the electronic environment, while providing maximum reasonable public access to court records and minimizing the risk of harm to individuals and entities involved in court proceedings." RECS Preamble (ECF No. 23-2). In developing the RECS, the SJC "carefully considered and weighed the importance of both public access and protection of privacy in court records in the context of an electronic case management and filing system." RECS Preamble.

In mid-December 2020, the SJC amended Rule 4(A)(1) of the RECS (the "**December RECS**") to provide that no civil court record would be accessible to the public until three business days after the court clerk had accepted both the case-initiating documents and proof of service of process on at least one defendant. Compl.

¶ 4 (ECF No. 1); Glessner Decl. ¶ 8; RECS Rule 4(A)(1). On February 3, 2021, the Courthouse News Plaintiffs filed suit alleging that the December version of Rule 4(A)(1) denied them access to newly filed civil complaints at the Penobscot County Superior Court. Compl. ¶¶ 5, 29.  The Courthouse News Plaintiffs alleged that the adoption of electronic filing substantially delayed their access to newly filed complaints, in some instances by several weeks from the date of filing, so they asked me to declare that they had a "First Amendment right of access to civil complaints and other civil judicial records" that "attaches upon receipt of such records by the court" and that RECS Rule 4 violated their "right of contemporaneous access to court records." Compl. ¶ 29, Prayer for Relief. They also asked me to enjoin the Defendants from "continuing their policy of denying immediate access to civil complaints and associated court records." Compl. Prayer for Relief.

With their Complaint, the Courthouse News Plaintiffs also moved for a preliminary injunction, seeking to enjoin the Defendants from enforcing the December version of Rule 4 and requiring that the Defendants make civil litigation records available immediately upon receipt. Pls.' Mot. for Prelim. Inj. 20 (ECF No. 3).[1]

## II.   The Maine Courts' Revision of the Electronic Filing Rules

On February 22, 2021, about three weeks after the Courthouse News Plaintiffs initiated this action, the SJC amended the RECS, effective March 15, 2021 ("**March**

---

[1]      On March 8, 2021, I granted Bangor Publishing Company's motion to intervene and join the Courthouse News Plaintiffs' motion for preliminary injunction. Order (ECF No. 21).

**RECS**").[2] Pls.' First Am. Compl. ¶ 5 (ECF No. 14); Intervenor-Pl.'s First Am. Compl. ¶ 5 (ECF No. 15). The March RECS did away with the provision prohibiting public access to a new civil complaint until after service on a defendant and replaced it with the following language: "Unless prohibited by law or by court order, a court record in a civil case is accessible by the public upon entry into the electronic case file." RECS Rule 4(A)(1). Under the March RECS, the following e-filing procedure is followed. First, a party submits a document for filing on the electronic filing system ("**EFS**").[3] Next the court clerk performs a ministerial check on the document for compliance with certain filing rules and enters the document into the electronic case file.[4] When

---

[2]     Although the parties have submitted many copies of the Maine Rules of Electronic Court System ("**RECS**") as exhibits to their filings, none appear to be the full version of the March RECS now in effect. *See* Pls.' Second Mot. for Prelim. Inj., Ex. 1 (Mar. 15, 2021 RECS amendments) (ECF No. 23-1) & Ex. 2 (December RECS) (ECF No. 23-2); Pls.' Opp'n to Mot. to Dismiss First Am. Compl. Ex. 1 (Mar. 15, 2021 RECS amendments) (ECF No. 24-1) & Ex. 2 (December RECS) (ECF No. 24-2); Pl. Bangor Publishing Co.'s Opp'n to Mot. to Dismiss First Am. Compl. Ex. 1 (Mar. 15, 2021 RECS amendments) (ECF No. 28-1) & Ex. 2 (December RECS) (ECF No. 28-2). However, because the March RECS are referenced in the complaints and the parties' briefing and are a matter of public record, I take judicial notice of them. March RECS, *available at* https://www.courts.maine.gov/rules/text/mrecs_2021-03-15.pdf (last visited July 15, 2021). *See Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir. 2011) (noting courts may "augment" the factual allegations pleaded in the complaint "with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice").

[3]     "For a document that is electronically submitted . . . Monday through Friday, the 'file date' will be the day it is submitted. If a document is submitted on a Saturday, Sunday, or legal holiday, the file date will be the next business day. For any questions of timeliness, the time and date registered by the EFS will be determinative. For a document electronically submitted, the file date will apply for purposes of meeting the statute of limitations or any other filing deadlines, even if the document is accepted by the clerk on a later date, except as provided in subdivision (D) of this rule." RECS Rule 35(B).

[4]     "Entry of a document submitted for electronic filing occurs after a court clerk has determined that the submission complies with M.R. Civ. P. 5(f) and Rule 34 of these rules. Once the document is entered, that electronic filing becomes part of the electronic case file." RECS Rule 2(A)(1).

The March 2021 Advisory Note to RECS Rule 2 states:

> Before entering a document into the system, a court clerk must ensure that the document is in proper electronic format, that it has been signed, that it is accompanied by any legally required elements, including but not limited to a filing fee, appeal fee,

4

the document is entered into the electronic case file, it is considered "accepted"[5] by the court as an electronic filing that can be accessed by the public.[6]

Because the March RECS have only been in effect for about four months, there is not much of a track record about how long it will take the court clerks to enter complaints into the electronic case file, thereby making them available to the public. The Defendants claim that the process is "ministerial" and essentially "the equivalent of the examination of paper submissions that occurs in other Maine courts." Glessner Decl. ¶ 12. The SJC expects that, "except in extraordinary circumstances," the clerk's office review will be completed within four business hours. Glessner Decl. ¶ 12.

## III.   The Plaintiffs' Amended Complaints and the Pending Motions

After the RECS were amended in February and before they went into effect on March 15, 2021, the Plaintiffs filed amended complaints (the "**Amended Complaints**"). Pls.' First Am. Compl. (ECF No. 14); Intervenor-Pl.'s First Am. Compl. (ECF No. 15). The Plaintiffs seek the same relief that they did in their original complaints—declarations that (1) there is a First Amendment right of access to civil

---

registry recording fee, or summary sheet, and that, if the document is filed by an attorney, the document lists the attorney's Maine Bar Registration Number. If the document does not comply with those requirements, it shall not be entered into the electronic filing system. See Rules 34 and 39, and M.R. Civ. P. 5(f). As indicated in Rule 35(D)(1), the clerk's review for entry or rejection is purely ministerial.

[5]     " 'Accept' or 'Acceptance' in the context of electronic filing indicates entry of an electronic document submitted to the electronic filing system." RECS Rule 2(A)(1). The March 2021 Advisory Note to RECS Rule 2 states: "Rule 2(A)(1) is amended to explain that the term used to signify the process that occurs when a document submitted to a court becomes part of the court's electronic case management system—'acceptance'—is a process involving only a review for compliance with filing requirements."

[6]     "Timing of access to court records accessible under these rules is determined by date of acceptance as defined in Rule (2)(A)(1). Court records become accessible upon acceptance unless otherwise provided in these rules." RECS Rule 3(D).

complaints and other civil judicial records that attaches upon receipt of such records by the court and (2) the March RECS violate the Plaintiffs' First Amendment right of contemporaneous access to court records, and a permanent injunction prohibiting the "Defendants from continuing their policy of denying immediate access to civil complaints and associated court records." Pls.' First Am. Compl. Prayer for Relief; Intervenor-Pl.'s First Am. Compl. Prayer for Relief.

On March 4, 2021, the Courthouse News Plaintiffs withdrew their first motion for preliminary injunction because the SJC had issued a temporary order allowing court clerks to provide paper copies of newly filed complaints to those requesting access. Pls.' Notice of Withdrawal of Mot. for Prelim. Inj. and Notice of New Judicial Branch Standing Order 1 (ECF No. 18), Ex. A (ECF No. 18-1).[7]

The Defendants moved to dismiss the Amended Complaints on the grounds that (1) the challenge to the abrogated December version of Rule 4(A)(1) is moot, and (2) the challenge to the March version of Rule 4(A)(1) is not ripe for adjudication and fails as a matter of law. Mot. to Dismiss First Am. Compl. ("**Defs.' Mot. to Dismiss**") 2, 6–9 (ECF No. 16); Mot. to Dismiss Intervenor- Pl.'s Bangor Publishing Company's First Am. Compl. 1 (ECF No. 22).[8]

---

[7] I note that this order has since been updated and continues to be effective "until further order of the court." The temporary standing order of the Maine Supreme Judicial Court ("**SJC**") provides that "[n]otwithstanding the [RECS] or any other rule of court, paper versions of any pleading entered into the pilot program of the Odyssey case management system at the Penobscot Judicial Center or the Business and Consumer Docket that are not designated as non-public may be produced and provided at no charge upon demand to any member of the public." *See* Me. SJC Temporary Standing Order, dated Mar. 12, 2021, *available at* https://www.courts.maine.gov/rules/text/mrecs_order_2021-03-12.pdf (last visited July 15, 2021).

[8] The Defendants' motion to dismiss Bangor Publishing Company's First Amended Complaint relies on "the same reasons identified" in its motion to dismiss the Courthouse News Plaintiffs' First Amended Complaint. Mot. to Dismiss Intervenor Bangor Publishing Company's First Am. Compl. 1

On March 17, 2021, two days after the amended March RECS took effect, the Plaintiffs again moved for a preliminary injunction seeking to enjoin the Defendants "from enforcing so much of the [March RECS] as deny press and public access to electronically filed court records until after the 'entry' of the records into the electronic case file." Pls.' Second Mot. for Prelim. Inj. ("**Pls.' PI Mot.**") 20 (ECF No. 23); *see* Pl. Bangor Publishing Company's Second Mot. for Injunctive Relief 2 (ECF No. 25) ("identical" request for injunctive relief).[9] They request that I "requir[e] Defendants to make records relating to new civil actions available to the public upon their receipt." Pls.' PI Mot. 20.

On June 9, 2021, I held oral argument (ECF No. 36) on both the Plaintiffs' motion for preliminary injunction and the Defendants' motion to dismiss. Because counsel for Courthouse News indicated at oral argument that the challenge was primarily a facial challenge to the existing RECS, following the argument, I directed the Plaintiffs to notify the Court as to whether they were still pursuing an as-applied challenge, and, if so, to supplement the record with evidence relating to the existence and duration of any access delays to newly filed complaints. Order (ECF No. 37). The Defendants were given an opportunity to respond with evidence of their own.

On June 14, 2021, the Courthouse News Plaintiffs filed their notice clarifying that—in addition to their facial challenge—they also "are pursuing an as-applied

---

(ECF No. 22). I thus refer to both motions collectively as the Defendants' motion and cite solely to the motion to dismiss the Courthouse News Plaintiffs' amended complaint (ECF No. 16).

[9]    Because Bangor Publishing Company's motion for injunctive relief (ECF No. 25) mirrors the Courthouse News Plaintiffs' motion, I refer to both motions collectively as the Plaintiffs' motion and cite solely to the Courthouse News Plaintiffs' Second Motion for Preliminary Injunction (ECF No. 23).

challenge to the RECS." Notice of As-Applied Challenge Pursuant to Order Dated June 9, 2021 ("**Pls.' Notice**") (ECF No. 38). In support of their contention that the current March RECS policy has resulted in delays in access, the Plaintiffs filed a declaration stating that, out of twenty-six complaints filed since the March RECS went into effect, six were not available to the public until the day after the filing and one was not available until two days after filing. Third Decl. of Adam Angione ¶ 6 (ECF No. 38-1).

The Defendants' responsive declaration indicated that the complaints in all but one of the cases cited by the Plaintiffs were available to the public online and in-person within the SJC's four-business-hour expectation, and the six next-day-available complaints were all filed either outside of the court's business hours or within the last hour. Third Decl. of James T. Glessner in Supp. of Defs.' Opp'n to Mots. for Prelim. Inj. ("**Third Glessner Decl.**") ¶ 6(a)–(f) (ECF No. 40). The one complaint that was not available until two days later was transferred to the Penobscot County Superior Court after originally being filed in paper in another county's court, and the clerk's office manually entered all docket entries from that case file into the electronic system. Third Glessner Decl. ¶ 7. The paper complaint in that case had been made publicly available in the originating court months earlier. Third Glessner Decl. ¶ 7.

## DISCUSSION

Before me are the Defendants' motions to dismiss the Amended Complaints and the Plaintiffs' motions for a preliminary injunction. I begin with the Defendants'

motions to dismiss because, if they are successful, the Plaintiffs' motions for injunctive relief necessarily fail.

## I.     The Defendants' Motions to Dismiss

The Defendants assert that this action should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure because the Plaintiffs' claims under the December RECS are moot and the Plaintiffs' claims under the March RECS are not ripe. Defs.' Mot. to Dismiss 2, 6–9. The Defendants also argue that the Amended Complaints fail to state a claim under Rule 12(b)(6). Defs.' Mot. to Dismiss 10–14. The Plaintiffs acknowledge in their opposition that their original claims under the December RECS are no longer viable. Pls.' Opp'n to Mot. to Dismiss First Am. Compl. ("**Pls.' Opp'n**") 7 (ECF No. 24); Pl. Bangor Publishing Company's Opp'n to Mot. to Dismiss First Am. Compl. 7–8 (ECF No. 28).[10] Therefore, my analysis focuses on whether the constitutional challenge to the March RECS is ripe for adjudication and, if so, whether the Plaintiffs have sufficiently stated a claim for relief.

### A.     Rule 12(b)(1) Ripeness

The Defendants argue that the Plaintiffs' challenge to the March RECS is not ripe for adjudication because the Plaintiffs can only speculate about the potential delay that might occur. Without information about any actual delays, the Defendants say it is impossible to assess the March RECS' burden on First Amendment rights. Defs.' Mot. to Dismiss 9. The Plaintiffs admit that the magnitude of post-March 15

---

[10]     The Plaintiffs' oppositions to the Defendants' motion to dismiss are nearly identical, so I refer to both responses collectively as the Plaintiffs' opposition and cite solely to the Courthouse News Plaintiffs' opposition (ECF No. 24).

delay is "undefined," *see* Defs.' Mot. to Dismiss 8 (quoting First Am. Compl. ¶ 39), but they respond that their claim is ripe because the amended rule is currently in effect and operates to delay access to the news, and because the Plaintiffs' request for access on receipt has been denied, Pls.' Opp'n 8, 10. They further argue that the Defendants' previous practice of long delays in processing documents and their refusal to employ alternatives that would provide contemporaneous access, such as "press review queue" software, show that the controversy is sufficiently definite for judicial review. Pls.' Opp'n 8–10.

### 1.   **Legal Standards**

District courts have an obligation to ensure that they have jurisdiction over a case before proceeding to the merits. *Olsen v. Hamilton*, 330 F. Supp. 3d 545, 551 (D. Me. 2018) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998)). A motion to dismiss under Rule 12(b)(1) challenges a court's subject-matter jurisdiction.[11] Article III of the Constitution restricts the jurisdiction of federal courts to "Cases" and "Controversies," U.S. Const. art. III, § 2, and "[t]hat limitation . . . is fundamental to the federal judiciary's role within our constitutional separation of powers." *Reddy v. Foster*, 845 F.3d 493, 499 (1st Cir. 2017) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

---

[11]     Establishing subject-matter jurisdiction is the plaintiff's burden, *Reddy v. Foster*, 845 F.3d 493, 500–01 (1st Cir. 2017), but I treat all well-pleaded facts as true and draw all reasonable inferences in the Plaintiffs' favor. *Portland Pipe Line Corp. v. City of South Portland*, 164 F. Supp. 3d 157, 174 (D. Me. 2016); *see also Lyman v. Baker*, 954 F.3d 351, 359 (1st Cir. 2020) (noting that same basic principles apply for analyses under both Rules 12(b)(1) and 12(b)(6)).

One strand of Article III's justiciability requirement is ripeness. *Reddy*, 845 F.3d at 499. "Whereas standing asks 'who' may bring a claim, ripeness concerns 'when' a claim may be brought." *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 32 (1st Cir. 2007). The "ripeness doctrine seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Reddy*, 845 F.3d at 500 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). As the Supreme Court has said:

> [I]t is fair to say that [the] basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967) (footnote omitted), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

There are two branches to the ripeness test: "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." *Id.* at 149. The fitness prong "typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995). The inquiry contains "both jurisdictional and prudential components." *Reddy*, 845 F.3d at 501 (quoting *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013)).

The jurisdictional component of the fitness prong concerns timing—"whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts." *Roman Catholic Bishop*, 724 F.3d at 89. The key question of this component is " 'whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all,' thus rendering any opinion [the court] might offer advisory." *Algonquin Gas Transmission, LLC. v. Weymouth*, 919 F.3d 54, 62 (1st Cir. 2019) (quoting *Ernst & Young*, 45 F.3d at 536); *see Mangual v. Rotger-Sabat*, 317 F.3d 45, 59 (1st Cir. 2003) ("The constitutional inquiry, grounded in the prohibition against advisory opinions, is one of timing.").

The prudential component of the fitness prong concerns judicial restraint—"whether resolution of the dispute should be postponed in the name of 'judicial restraint from unnecessary decision of constitutional issues'; if elements of the case are uncertain, delay may see the dissipation of the legal dispute without need for decision." *Mangual*, 317 F.3d at 59 (internal citation omitted) (quoting *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 138 (1974)). On the other hand, if the case "turn[s] on legal issues not likely to be significantly affected by further factual development," the court may find the case fit for review even if events "have not yet fully unfolded." *Ernst & Young*, 45 F.3d at 536.

Turning to the hardship prong of the ripeness analysis, which is "wholly prudential," the court must ask "whether the challenged action creates a direct and immediate dilemma for the parties." *Roman Catholic Bishop*, 724 F.3d at 90 (internal quotations omitted). "Generally, a mere possibility of future injury, unless it is the

cause of some present detriment, does not constitute hardship." *Id.* (quoting *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 9 (1st Cir. 2012)).

Both the fitness and hardship prongs ordinarily must be satisfied for a claim to be ripe. *Id.* at 89. It is the burden of the party seeking jurisdiction to prove ripeness. *Labor Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016). "Whether a challenge is facial or as-applied can bear on whether it is ripe." *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 826 (1st Cir. 2020). A facial challenge "implicating First Amendment values[ ] customarily works a relaxation of the ripeness criteria." *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 495–96 (1st Cir. 1992). "First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection[ ] because of the fear of irretrievable loss." 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3532.3 (3d ed. 2008).

### 2.    Application

The Plaintiffs here are challenging the RECS both facially and as they have been applied to the Plaintiffs' efforts to access civil complaints in state court. *See* Pls.' Notice 1. I look first to whether the facial challenge is ripe and then consider the as-applied challenge.

### a.    Facial Challenge to the RECS

In assessing whether the Plaintiffs have met their burden under the fitness prong of the ripeness inquiry, I consider the timing-based questions of finality, definiteness, and the extent to which resolution depends on yet-to-be-developed facts to the Plaintiffs' facial challenge. At the time the Defendants filed their Motion to

Dismiss, on March 1, 2021, the amended version of RECS Rule 4(A)(1)—removing the requirement that the clerk's office receive proof of service on one defendant before making a complaint available to the public—had been announced but had not yet taken effect. But now, the March RECS have been in effect since March 15, 2021, and because they are being applied they are sufficiently final and definite for ripeness purposes.[12] Further, because this is a facial challenge, it is not dependent on facts that are yet to be developed.

Although the prudential component of the fitness prong sometimes calls for judicial restraint where postponing resolution prevents the Court from unnecessarily deciding constitutional issues, here I find the facial challenge to the March RECS to be fit for my review. *See Project Veritas*, 982 F.3d at 829 ("A facial constitutional challenge presents only a legal issue—the quintessentially 'fit' issue for present judicial resolution.").

I also find that the Plaintiffs' claim satisfies the standard under the hardship prong of the ripeness inquiry. Because their claim implicates free speech, the ripeness requirements are relaxed. The Plaintiffs allege that they are being deprived of their First Amendment rights and injured by the March RECS provisions that delay press access to complaints until after entry by the clerk. Assuming this to be true, this creates a direct and immediate dilemma for the parties and hardship to the Plaintiffs

---

[12]    I am mindful of the fact that the RECS are part of a pilot project and subject to further development and amendment, but the Plaintiffs are bringing a facial challenge to the March RECS, which are in effect and being used in court operations today, so the Plaintiffs' facial challenge satisfies finality and definiteness.

looms. For these reasons, I conclude that the Plaintiffs' facial challenge to the March RECS is ripe for my review.

### b.     As-Applied Challenge

The Plaintiffs also bring an as-applied challenge to the March RECS. *See* Pls.' Notice 1–2 ("Plaintiffs allege that the implementation of the current RECS policy by the Defendants has resulted, as a factual matter, in delays in access to a substantial percentage of newly-filed complaints until after the date of filing."). The Defendants argue in their motion to dismiss, which was filed before the revised March RECS became effective, that the Plaintiffs' claim is not ripe because "it is impossible to know for sure" the magnitude of any alleged delay until the RECS have been implemented. Defs.' Mot. to Dismiss 8.

Ripeness is "peculiarly a question of timing," and a case can become ripe for adjudication over the course of the case even if it is initially premature. *See Reg'l Rail Reorganization,* 419 U.S. at 140. While there are instances where "adjudication might be postponed until a better factual record might be available," *Project Veritas*, 982 F.3d at 828 (internal quotations omitted), here the Plaintiffs and the Defendants have documented the access delays during the three months since the March RECS went into effect.[13] Applying the fitness and hardship inquiries to this aspect of the

---

[13]     Following oral argument on the pending motions, the Courthouse News Service Plaintiffs provided some evidence of post-March 15 delays. Third Decl. of Adam Angione ("**Third Angione Decl.**") (ECF No. 38-1); Third Decl. of James T. Glessner in Supp. of Defs.' Opp'n to Mots. for Prelim. Inj. ("**Third Glessner Decl.**") (ECF No. 40). I have considered this factual record in the ripeness analysis. *See Groden v. N&D Transp. Co.*, 866 F.3d 22, 24 (1st Cir. 2017) ("When considering motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may consider materials outside the pleadings.")

Plaintiffs' claim, I find that the as-applied challenge is also ripe for judicial review.[14]

### B.     Rule 12(b)(6) Failure to State to a Claim

The Plaintiffs allege that they have a First Amendment right of access to civil complaints that attaches upon the court's receipt of the complaint and that the March RECS violate that constitutional right by delaying access until after the court enters and accepts the complaint. The Defendants argue that the Plaintiffs fail to state a claim because "a 'no-access-before-process' rule is not prohibited by the First Amendment." Defs.' Mot. to Dismiss 10. The Defendants contend that there is no First Amendment right to access civil complaints upon receipt under the applicable "experience and logic" test. Defs.' Mot. to Dismiss 11–12. They argue that there is no allegation that the March RECS "will result in any more than a negligible delay in access to newly filed nonconfidential civil court records."  Defs.' Mot. to Dismiss 10

---

[14]     I have considered the question of abstention, even though the Defendants did not ask me to do so. Courthouse News Service has brought a number of similar challenges in courts across the country, and most, but not all, courts have declined to abstain, even when abstention was requested by the defendants. There are two exceptions. The Seventh Circuit in *Courthouse News Service v. Brown*, reversed a district court's preliminary injunction prohibiting a state court clerk from enforcing a policy of withholding newly filed civil complaints until after processing, concluding that the lower court should have abstained. 908 F.3d 1063, 1065–66 (7th Cir. 2018). The Seventh Circuit noted that the "principle of comity takes on special force when federal courts are asked to decide how state courts should conduct their business." *Id.* at 1074. Like here, the state courts in *Brown* were in the process of transitioning to electronic filing, and the Seventh Circuit recognized the propriety of the federal courts "step[ping] back" while the state courts worked through the "implementation challenges and resource limitations" associated with the transition. *See id.* Similarly, in *Courthouse News Service v. Gilmer*, a district court abstained because it did "not wish to dictate to, oversee, or otherwise insert itself into the operations and administration of its co-equal Missouri state courts" and noted that it was "very strange, indeed" for the federal district court "to impose on a state court a practice which is not currently employed by the Supreme Court of the United States." Case No. 4:21CV286 HEA, 2021 WL 2438914, at *9 (E.D. Mo. June 15, 2021). I find the reasoning of these courts somewhat persuasive. But because the Defendants did not raise abstention and affirmatively indicated at oral argument that they had considered and decided not to seek abstention, and because "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,'" *Pustell v. Lynn Pub. Schs.*, 18 F.3d 50, 53 (1st Cir. 1994) (quoting *Colo. River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1994)), I find it an appropriate exercise of federal jurisdiction to hear the Plaintiffs' claims.

(citing Pls.' First Am. Compl. ¶ 39). The Plaintiffs respond that the March RECS delay access until after clerk processing and that the March RECS cannot withstand heightened scrutiny because the Defendants have not shown a valid and narrowly tailored governmental interest for the delay.[15]

### 1.   Legal Standards

#### a.   Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the "legal sufficiency" of a complaint. *Me. Educ. Ass'n Benefits Tr. v. Cioppa*, 842 F. Supp. 2d 373, 376 (D. Me. 2012) (internal quotations omitted). The general rules of pleading require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That "short and plain statement" need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and alterations omitted).

To determine whether a complaint states a claim, courts in the First Circuit follow a two-step analysis. First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-

---

[15]     The Plaintiffs also point out that electronic filers receive emails after filing stating that they should "allow up to 24 business hours"—three business days—"for clerk office processing." Pls.' Opp'n 11. In reply, the Defendants explain that that email message is outdated, sent under the pre-March 15 abrogated version of the RECS, and does not reflect how clerks are proceeding under the current RECS since the March 15, 2021 amendment. Defs.' Reply. This exchange highlights a timing complication presented by the parties' motions. The Plaintiffs' First Amended Complaint and some of the briefing connected to the motion to dismiss and preliminary injunction were filed under the December RECS; by the time briefing was completed and the motions came under advisement, the new March RECS had gone into effect. Both parties agree that the Plaintiffs' claims relating to the December RECS are now moot, but vestiges of those abrogated rules and the court's practices under them still linger in the documents before me and muddy the arguments and analyses being advanced by the parties.

action elements." *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014) (internal quotations omitted). Then, taking all well-pleaded facts as true and "drawing all reasonable inferences in plaintiff's favor," the court must determine whether the complaint "plausibly narrate[s] a claim for relief." *Id.* (internal quotations omitted). "Plausible" means "more than merely possible" but does not require all facts necessary to establish a prima facie case. *Id.* at 717–18 (internal quotations omitted). Distinguishing sufficient from insufficient pleadings is a "context-specific task." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal for failure to state a claim is appropriate where the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted).

### b.    First Amendment Right of Access

Whether the Plaintiffs have stated a claim depends on whether there is a First Amendment right for the public and the press[16] to access a civil complaint immediately upon the court's receipt of the document. Although the public has "a qualified First Amendment right of access to certain judicial proceedings and documents," *In re Bos. Herald, Inc.*, 321 F.3d 174, 182 (1st Cir. 2003), the exact contours of this First Amendment right are still being defined. Neither the Supreme

---

[16]     "The First Amendment generally grants the press no right to information . . . superior to that of the general public." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 609 (1978).

Court nor the First Circuit has yet addressed whether there exists a right of public access to civil complaints, so background on this developing body of law is helpful.

### i.    Development of the First Amendment Right of Access by the Supreme and Appellate Courts

The First Amendment, which applies to the states through the Fourteenth Amendment, prohibits any law "abridging the freedom of speech, or of the press." U.S. Const. amend. I. In the seminal case of *Richmond Newspapers, Inc. v. Virginia*, the Supreme Court recognized that the right of the public to attend criminal trials is implicit in the First Amendment. 448 U.S. 555, 580 (1980). In *Richmond Newspapers*, the state court had excluded the press and public from the courtroom during a murder trial, and newspaper reporters challenged the closure. *Id.* at 560–62. In finding that the public has a presumptive right of access to criminal trials under the First Amendment, the Supreme Court looked to history and reviewed the role that public participation in criminal trials has played in the integrity of the judicial process. *See id.* at 569–73.

In *Globe Newspaper Co. v. Superior Court for Norfolk County*, the Supreme Court again held that the public and press have a presumptive right to access criminal proceedings, this time striking down as a violation of the First Amendment a Massachusetts law that provided for exclusion of the public from sex offense trials involving minor victims. 457 U.S. 596, 598, 602  (1982). Again, the Court focused on the historical openness of criminal trials and the importance of public scrutiny of criminal trials to "the functioning of the judicial process and the government as a whole." *Id.* at 605–06. The Court instructed that the right of access is not absolute

but that it can be denied only if "the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Id.* at 606–07.

This two-part inquiry, which has come to be known as the "experience and logic" test, was endorsed as the appropriate framework for analyzing First Amendment claims over access to judicial proceedings in *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501 (1984) ("*Press-Enterprise I*"). There, the Supreme Court held that the right of access extended to pretrial *voir dire* proceedings in a case involving the rape and murder of a teenage girl. *See generally id.* The Court noted that jury selection was historically open and that openness "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Id.* at 505–08. After concluding that a constitutional right of access to *voir dire* proceedings existed, the Court examined whether the presumption of openness was rebutted "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 508–10. While recognizing the privacy interests of prospective jurors and the defendant's Sixth Amendment right to a fair trial, the Supreme Court ultimately concluded that closing the courtroom for nearly six weeks of jury selection and denying the media's request for a transcript, went too far. *Id.* at 510–11. Because the trial judge failed to consider alternatives to closure and denied the request for a transcript without considering redaction of sensitive information or preserving the anonymity of jurors, the Supreme Court vacated and remanded the case. *Id.* at 513. The Supreme Court later used the

20

experience-and-logic analysis in *Press-Enterprise Co. v. Superior Court of California for Riverside County*, to conclude that the qualified First Amendment right of access to criminal proceedings also applied to the transcript of a preliminary hearing in a state criminal prosecution. *See generally* 478 U.S. 1 (1986) ("*Press-Enterprise II*").

In the wake of these Supreme Court cases, the First Circuit has used the experience-and-logic framework, which has come to be known as the *Press-Enterprise* test, to analyze whether the public has a First Amendment right of access to specific judicial proceedings. But "[t]he full scope of the constitutional right of access is not settled in the law." *In re Boston Herald*, 321 F.3d at 182. Using a case-by-case process, *id.*, the First Circuit has found a qualified First Amendment right to:

- Access pretrial bail hearings and the documents filed in connection with the bail determination in a criminal case. *In re Globe Newspaper Co.*, 729 F.2d 47, 59 (1st Cir. 1984) (recognizing right but holding that defendant's right to a fair trial and privacy outweighed the public's right of access).

- Access the records of completed criminal cases that ended without conviction. *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 510–11 (1st Cir. 1989) (noting that right applies to records in cases ending in acquittal, dismissal, *nolle prosequi*, or a finding of no probable cause, but does not extend to records in cases where grand jury opts not to indict).

- Access legal memoranda that are filed with motions in criminal cases on which the court is meant to rely in determining the parties' substantive rights. *In re Providence J. Co.*, 293 F.3d 1, 12–13, 16 (1st Cir. 2002) (holding that court's "blanket nonfiling policy"—a practice of not placing memoranda submitted with motions in publicly available case file—violated First Amendment).

Conversely, the First Circuit has found no First Amendment right to:

- Access pretrial subpoenas and related documents filed under seal during pretrial proceedings in a criminal case. *United States v. Kravetz*, 706 F.3d 47, 56 (1st Cir. 2013).

- Access financial documents submitted in a criminal case to demonstrate the defendant's eligibility for Criminal Justice Act funds. *In re Boston Herald*, 321 F.3d at 189.

The First Circuit has never held that a qualified right of access attaches to just-filed civil complaints, and it has expressed some reluctance about doing so. *See El Dia*, 963 F.2d at 495 ("[W]e seriously question whether *Richmond Newspapers* and its progeny carry positive implications favoring rights of access outside the criminal justice system."). To date, it has only addressed the issue of public access to civil proceedings and documents a handful of times.

In *Anderson v. Cryovac, Inc.*, the First Circuit applied the *Press-Enterprise* test to a civil tort action where an intervenor newspaper sought discovery materials that were submitted to the district court under protective orders in connection with motions to compel the production of documents and a motion to quash a deposition subpoena. *See generally* 805 F.2d 1 (1st Cir. 1986). Noting that courts in other jurisdictions had recognized a public right of access to civil trials and some pretrial civil proceedings, the First Circuit determined that it "need not decide" whether it agreed "with those courts extending a right of public access to documents considered in rulings on dispositive pretrial motions" or "whether there is a public right of access to civil trials in general" because neither of those questions was before the court. *Id.* at 11. Instead, the First Circuit stated: "We think it is clear and hold that there is no right of public access to documents considered in civil discovery motions." *Id.* Because "discovery proceedings are fundamentally different from proceedings to which the courts have recognized a public right of access," the First Circuit held that "[h]istory and logic" led to the conclusion "that there is no presumptive first amendment public

right of access to documents submitted to a court in connection with discovery motions." *Id.* at 11, 13.

In another civil case, *Siedle v. Putnam Investments, Inc.*, the First Circuit was initially presented with the question of whether the press "had an independent right of access to judicial materials, secured by the First Amendment." 147 F.3d 7, 9 n.4 (1st Cir. 1998). But because the New York Times (the intervenor that had advanced the argument) had voluntarily withdrawn from the litigation, the First Circuit bypassed "this nettlesome constitutional issue" and instead analyzed whether the common-law presumption of access attached to the documents in question. *Id.*[17]

In *In re Providence Journal Co.*, a newspaper filed mandamus petitions seeking access to materials submitted in connection with the criminal trial of the mayor of Providence. 293 F.3d at 5–6. The First Circuit held that the district court's longstanding practice of not filing legal memoranda submitted in connection with motions in the publicly accessible case file violated the First Amendment. *Id.* at 12–13. In a footnote, the First Circuit stated:

> Although the Supreme Court has not established whether the constitutional right of access attaches to civil cases in general, the common-law right of access extends to judicial records in civil proceedings. As said, that right encompasses legal memoranda. Because

---

[17]    The Supreme Court recognized a common-law presumption of public access to judicial records in *Nixon v. Warner Communications*. *See* 435 U.S. at 597–99. There, the Court acknowledged that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Id.* at 597 (footnote omitted). The First Circuit has explained that this public-access "privilege extends . . . to 'materials on which a court relies in determining the litigants' substantive rights,' " but "[t]hose documents which play no role in the adjudication process, . . . such as those used only in discovery, lie beyond reach." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987) (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986)). The Plaintiffs here challenge the RECS on First Amendment grounds only and have not alleged a violation of any common-law right of access, so I need not address this issue further.

23

> none of the respondent's rationales for rendering legal memoranda presumptively nonpublic rise to the level of a compelling reason sufficient to justify the nondisclosure of those documents, our invalidation of the District of Rhode Island's blanket nonfiling policy vis-à-vis legal memoranda applies in civil as well as criminal proceedings.

*Id.* at 13 n.5 (internal citation omitted). While not entirely clear, this footnote suggests that the First Circuit relied on the common-law right of access in recognizing, in dicta, a right to access memoranda filed in civil cases. *See id.*

Other than this limited precedent, I am without Supreme Court and First Circuit directive on whether a qualified right of access under the First Amendment extends to civil complaints. There are, however, many circuits that have concluded that the constitutional right of access applies to civil proceedings. *See, e.g.*, *N.Y.C.L. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012) ("[T]he First Amendment guarantees a qualified right of access not only to criminal but also to civil trials and to their related proceedings and records."); *Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) ("[T]he First Amendment . . . protects the public's right of access to the records of civil proceedings."); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (recognizing First Amendment right to access documents submitted with summary judgment motion); *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1178 (6th Cir. 1983) ("The Supreme Court's analysis of the justifications for access to the criminal courtroom apply as well to the civil trial."); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) ("[W]e agree with the Sixth Circuit that the policy reasons for granting public access to criminal proceedings apply to civil cases as well.").

### ii.    Courthouse News Service Cases

The parties discuss several additional cases recently brought by Courthouse News Service in other jurisdictions that address the issue of access to civil proceedings, which are also instructive.

In *Courthouse News Service v. Planet*, the plaintiff sought same-day access to newly filed civil complaints in a California county court. 947 F.3d 581, 587 (9th Cir. 2020) ("*Planet III*"). The case involved paper filings, and the court provided the press access by placing new complaints in a media bin in the clerk's office. *Id.* at 586. Before a complaint made it to the media bin, however, court staff undertook a seven-step processing procedure[18] followed by a supervisor quality control review, which often took several days to complete. *Id.* The court's process resulted in "significant delays"; more than half of the complaints took two or more court days to reach the media bin (and some never did). *Id.* at 586–87. After Courthouse News Service sued, the state court began scanning new civil complaints before the review-and-process procedure so that they were available to view on public computer terminals at the clerk's office between 8:00 a.m. and 3:00 p.m. *Id.* at 387. Complaints filed after 3:00 p.m. were made available to the public the next day.  *Id.*

---

[18]    The process involved the court staff member: (1) confirming that the complaint was filed in the correct court, contained all necessary documents, and was accompanied by the appropriate filing fee or waiver; (2) entering information into the court's case management system to create a new case; (3) entering all accompaniments, such as filing fee checks, and generating a receipt; (4) issuing any required summons; (5) stamping the documents as filed; (6) generating labels from the case management system and placing those, along with the filing date, courtroom assignment, and case destruction stamp, on the physical case file; and (7) placing the documents in the case file. *Courthouse News Serv. v. Planet*, 947 F.3d 581, 586 (9th Cir. 2020) ("*Planet III*").

On appeal, the Ninth Circuit applied *Press-Enterprise II* and held that the press enjoys "a qualified right of timely access to newly filed civil nonconfidential complaints that attaches when the complaint is filed." *Id.* at 585. But it went on to hold that "this right does not entitle the press to immediate access to those complaints." *Id.* The majority opinion determined that "[s]ome reasonable restrictions resembling time, place, and manner regulations that result in incidental delays in access are constitutionally permitted where they are content-neutral, narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice." *Id.* The Ninth Circuit applied a balancing test, requiring the county clerk to "demonstrate first that there is a 'substantial probability' that its interest in the fair and orderly administration of justice would be impaired by immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that government interest." *Id.* at 596 (quoting *Press-Enterprise II*, 478 U.S. at 14). The Ninth Circuit found that the state court's former no-access-before-process policy did not pass constitutional muster but that the scanning policy was constitutional, because the state court "demonstrated that the overnight delay in access to complaints filed during the last ninety minutes of the court's public hours was no greater than essential to manage necessary court operations under the circumstances existing at the time." *Id.* at 598–600.

The concurring judge in *Planet III* reasoned that limitations on the right of access (as opposed to outright denials of access) should be subjected to the time, place, and manner standard, which permits government regulations that are not content-

based to survive if " 'they are narrowly tailored to serve a significant governmental interest, and . . . they leave open ample alternative channels for communication of the information.' " *Id*. at 600–01 (Smith, J., concurring) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). The concurring judge ultimately reached the same conclusion as the majority for slightly different reasons: the no-access-before-process policy violated the First Amendment right of access (because it did not "reasonably regulate public access to civil complaints"), but the scanning policy did not violate the First Amendment (because it was content-neutral, narrowly tailored to serve a significant governmental interest, and the "minor delays" left open ample alternative channels for communication where reporters were still able to access complaints "in a timely enough manner to report on newsworthy issues"). *Id*. at 604–06.

In *Courthouse News Service v. Schaefer,* Courthouse News Service alleged delays caused by clerk's office intake procedures in two Virginia county courts over a seven-month period. No. 20-1290, --- F.4th ----, 2021 WL 2583389, at *1 (4th Cir. June 24, 2021). Following a four-day bench trial, the district court made detailed findings of fact about the percentages of newly filed civil complaints that were made available the same day, the day after, and two or more days after the day of filing. *Id*. at *1; *see Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 546–50 (E.D. Va. 2020).[19] For example, in one month, a state court only made 19% of civil complaints available the same day as filing; in another month in a different court, 41.5% of the complaints

---

[19]     The *Schaefer* case appears to have involved delays in access to both e-filed and paper-filed complaints. *See Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 539–40 (E.D. Va. 2020).

were not available until two or more court days after filing. *Schaefer*, 2021 WL 2583389, at \*1. Based on these facts, the district court determined that the state court had violated the public's qualified First Amendment right of "contemporaneous" access to newly filed civil complaints. *Schaefer*, 440 F. Supp. 3d at 558–60. The court entered a declaratory judgment to that effect but denied Courthouse News Service's motion for injunctive relief. *Id.* at 561–63.

On appeal, the Fourth Circuit affirmed. Applying *Press-Enterprise*, the Fourth Circuit held that because the experience and logic prongs were satisfied, there was a qualified First Amendment right of access to newly filed civil complaints. *Schaefer*, 2021 WL 2583389, at \*4, \*6. Turning to whether the clerk's office had violated the public's First Amendment right of access, the Fourth Circuit first addressed the level of scrutiny to be applied. After noting that strict scrutiny ordinarily applies to an asserted infringement of a First Amendment right of access, the court explained:

> But the Supreme Court has instructed that "limitations on the right of access that resemble 'time, place, and manner' restrictions on protected speech will not be subjected to such strict scrutiny." *Globe Newspaper Co.*, 457 U.S. at 607 n.17. The Clerks' practices do indeed resemble time, place, and manner restrictions, so we apply more relaxed scrutiny. *See Planet III*, 947 F.3d at 595. In the context of this case, this requires that delays in access be "content-neutral, narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice." *Id.* at 585.

2021 WL 2583389, at \*7. The Fourth Circuit held that "[t]his flexible standard does not require perfect or instantaneous access. Rather, it provides courts with some leeway where same-day access would be impracticable, and fully exempts

inconsequential delays and those caused by extraordinary circumstances." *Id.*[20] This flexibility, according to the Fourth Circuit, "accords with precedent in recognizing that the Constitution does not require the impossible." *Id.* The court then upheld the district court's "grant of a careful, nuanced declaratory judgment" that the state court defendants had violated the First Amendment right to "contemporaneous" public access, which was based on the district court's post-trial finding "that it was both possible and practicable to provide same-day access to most newly filed civil complaints." *Id.* at *7–8.

In *Courthouse News Service v. Tingling*, the district court granted Courthouse News Service's motion for a preliminary injunction. 16 Civ. 8742 (ER), 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016). Under Second Circuit law, complaints are judicial records that are subject to a presumption of public access under the First Amendment. *Tingling* Prelim. Inj. Hr'g Tr. ("*Tingling* Tr.") 49:1–9 (ECF No. 23-5) (citing *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016)). In *Tingling*, Courthouse News Service maintained that one out of three cases filed each day were withheld from the public and that often the delay was greater than one day. *Tingling* Tr. 3:1–3. Applying strict scrutiny, the court concluded that the state court defendant "failed to meet its burden of demonstrating that its policy of refusing to provide the public and press access to newly filed complaints

---

[20]     The Fourth Circuit approved of the district court's application of this more relaxed scrutiny in its holding that "contemporaneous" in the First Amendment right of access context means " 'the same day on which the complaint is filed, insofar as is practicable; and when not practicable, on the next court date'—excepting inconsequential deviations and extraordinary circumstances which may, without violating the constitution, delay access." *Schaefer*, 2021 WL 2583389, at *7 (quoting *Schaefer*, 440 F. Supp. 3d at 562).

until after they are reviewed and logged is either essential to preserve higher values or is narrowly tailored to serve that interest." *Tingling* Tr. 52:18–23.

Finally, in *Courthouse News Service v. Jackson*, the district court granted Courthouse News Service's motion for a preliminary injunction after finding that delays in access to newly filed civil complaints ranged from 24–72 business hours (three to nine days) after filing. Civil Action No. H-09-1844, 2009 WL 2163609, at *1–2 (S.D. Tex. July 20, 2009). There, the defendants admitted that Courthouse News Service had a right of access to new civil complaints but argued that the access delay was a reasonable time, place, or manner restriction. *Id.* at *2. The court disagreed and found that the 24-to-72-business-hour delay "is effectively an access denial and is, therefore, unconstitutional." *Id.* at *4. The court concluded that Courthouse News Service was likely to prevail on the merits because the state court defendants failed to demonstrate that the delay in access "is narrowly tailored to serve [an overriding] interest and that no less restrictive means of achieving that interest exists." *Id.*

### 2. Application

#### a. Whether there is a First Amendment Qualified Right of Access to Civil Complaints

*Press-Enterprise II* provides the test for determining whether a First Amendment right of access exists in this context. *See In re Bos. Herald*, 321 F.3d at 184 ("[C]ourts must apply the *Press-Enterprise II* standards to a particular class of documents or proceedings and determine whether the right attaches to that class."). Under the *Press-Enterprise* test, I consider " 'whether [civil complaints] have historically been open to the press and general public' (the 'experience' prong),

and 'whether public access plays a significant positive role in the functioning of the particular process in question' (the 'logic' prong)." *See Kravetz*, 706 F.3d at 53–54 (quoting *Press-Enterprise II*, 478 U.S. at 8–9).

### i.   Experience

Under the experience prong of *Press-Enterprise II*, I "look at whether materials like these . . . documents have been open to the public in the past, 'because a tradition of accessibility implies the favorable judgment of experience.' " *In re Boston Herald*, 321 F.3d at 182 (quoting *Press-Enterprise II,* 478 U.S. at 8).

Other courts have found that "[c]omplaints have historically been publicly accessible by default." *Bernstein*, 814 F.3d at 141; *see Schaefer*, 2021 WL 2583389, at *5 ("[T]he experience prong supports a First Amendment right of access to civil complaints."); *Planet III*, 947 F.3d at 591 ("[A]lthough 'the First Amendment does not explicitly mention a right of access to court proceedings and documents, the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents,' and . . . this right extends to civil complaints.") (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068–70 (7th Cir. 2018)).

Prior to the RECS, nonconfidential civil complaints filed on paper in Maine state courts were made available to the public and the press. *See* Pls.' First Am. Compl. ¶ 32; Second Decl. of James T. Glessner in Supp. of Defs.' Opp'n to Mots. for Prelim. Inj. ¶ 10 (ECF No. 30-1); *cf. Schaefer*, 440 F. Supp. 3d at 538 ("Plaintiff, and other members of the press and public, have historically enjoyed a tradition of court clerks making most newly-filed civil complaints publicly available on the day that

they are filed.").[21] The experience prong of the *Press-Enterprise* test supports a finding of a public right of access to civil complaints.

## ii.   Logic

Under the logic prong of the test, I consider "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II,* 478 U.S. at 8. "Courts have long recognized that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system." *Kravetz*, 706 F.3d at 52 (quoting *In re Providence J.*, 293 F.3d at 9). Although *Kravetz* was a criminal case and the First Circuit has yet to recognize a right of access to civil judicial documents, the same values are involved, perhaps to a slightly diminished degree, in civil cases. "[W]ithout access to documents the public often would not have a 'full understanding' of the proceeding and therefore would not always be in a position to serve as an effective check on the system." *Pokaski*, 868 F.2d at 502 (citing *In re Globe Newspaper,* 729 F.2d at 52). In a civil case, the complaint provides the subject matter of a filed lawsuit and sets the framework for all subsequent court action. Allowing access to these initiating records

---

[21]   There are special rules that provide for confidentiality in certain actions, such as matters in the court's family division. *See* Me. R. Civ. P. 102 (clerk shall seal "[i]f a party alleges in an affidavit or a pleading under oath that the health, safety or liberty of a party or minor child would be jeopardized by disclosure of identifying information appearing in any document filed with the court"); *id.* ("A party filing an action for parentage by assisted reproduction or gestational carrier agreement may request an order sealing the records from the public to protect the privacy of the child and the parties."); *see also* Me. R. Civ. P. 80M(a) ("Medical malpractice screening panel proceedings shall be confidential."); Me. R. Civ. P. 91(b); (in proceedings for waiver of payment of fees or costs, accompanying financial affidavit "shall be kept separate from the other papers in the case and kept confidential . . . [and] shall not be available for public inspection, except by order of the court."). These confidentiality provisions are not at issue here because the Plaintiffs allege that it is the delayed access to "non-confidential, electronically filed civil complaints" that violates the First Amendment. Pls.' First Am. Compl. ¶ 50.

allows the public to understand the litigation and puts the public in a position where it can evaluate the quality and honesty of the judiciary. Such access therefore plays a significant positive role in the court system. Under the experience and logic test, I conclude that there is a qualified First Amendment right of public access to civil complaints.

### b. Deciding and Applying the Appropriate Level of Scrutiny

The Plaintiffs assert that "[t]he Defendants' policy of denying access to complaints and other judicial records until after clerk office processing is the sort of 'blanket prohibition on the disclosure of records' that 'implicates the First Amendment.' " Pls.' Opp'n 13 (quoting *Pokaski*, 868 F.2d at 505–06). But the March RECS rules are not blanket prohibitions on the disclosure of records. To the contrary, the March RECS were created to provide rather than prohibit access to electronically filed court records. The Plaintiffs' challenge concerns the timing, not the denial, of public access.[22]

The distinction makes a difference. Strict scrutiny has been applied to *denials* of the right of access to judicial records or proceedings. *See Globe Newspaper Co.*, 457 U.S. at 606–07 (holding that "to deny the right of access in order to inhibit the

---

[22] Most cases finding First Amendment access violations involved denial of access, either by full closure of courtrooms during court proceedings or by sealing of judicial records. *See generally Richmond Newspapers, Inc. v. Virginia* 448 U.S. 555 (1980) (closed criminal trial), *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596 (1982) (same); *Press-Enterprise Co. v. Sup. Ct.*, 464 U.S. 501 (1984) (closed *voir dire* proceedings before criminal trial and refusal to release transcript), *Press-Enterprise Co. v. Sup. Ct.*, 478 U.S. 1 (1986) (closed preliminary criminal hearing and sealed transcript); *In re Globe Newspaper Co.*, 729 F.2d 47 (1st Cir. 1984) (closed criminal bail proceedings); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497 (1st Cir. 1989) (sealed court records of criminal cases not ending in conviction); *In re Providence J. Co.*, 293 F.3d 1 (1st Cir. 2002) ("blanket" policy of not placing legal memoranda in publicly accessible case file).

33

disclosure of sensitive information" the state court must show "that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest") (courtroom closed to public for "entire" sex-offense trial  involving minors); *Press-Enterprise II*, 478 U.S. at 14–15 ("complete closure" of preliminary hearing on murder complaint and transcript of proceedings sealed); *Press-Enterprise I*, 464 U.S. at 509–10, 513 (closure of courtroom to public for six weeks of *voir dire* and "total suppression of the transcript"); *Richmond Newspapers*, 448 U.S. at 580–81 (courtroom closed to public during murder trial). But "*limitations* on the right of access that resemble 'time, place, and manner' restrictions on protected speech would not be subjected to such strict scrutiny." *Globe Newspaper Co.*, 457 U.S. at 607 n.17 (emphasis added) (internal citation omitted); *see also Richmond Newspapers*, 448 U.S. at 581 n.18 ("Just as a government may impose reasonable time, place, and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic, so may a trial judge, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial" (internal citation omitted)).[23]

The First Circuit has also noted the distinction. In *Pokaski*, the First Circuit held that "a blanket prohibition on the disclosure of records" in a court case "implicates" First Amendment rights and triggers "heightened scrutiny." *Pokaski*,

---

[23]     The Supreme Court recognized the importance of conducting trials "in a quiet and orderly setting" and noted that, because "courtrooms have limited capacity, there may be occasions when not every person who wishes to attend can be accommodated," in which case "reasonable restrictions on general access are traditionally imposed." *Richmond Newspapers*, 448 U.S. at 581 n.18.

868 F.2d at 505. But the First Circuit was analyzing a Massachusetts statute that automatically sealed criminal cases that ended without a conviction. It did not squarely address the *timing* of access to court records. In fact, quite the opposite. The *Pokaski* court explained that the challenged statute was "not a time, place, or manner restriction, which need only be reasonable to survive First Amendment scrutiny" because the harm the statute aimed to prevent—the intrusion into criminal defendants' privacy interests—"flow[ed] directly from the content of the information sought." *Id.* In other words, the First Circuit suggested that where a statute amounts to a reasonable time, place, or manner distinction, heightened scrutiny would not apply. It was only because the law in *Pokaski* was considered a content-based restriction that heightened scrutiny applied.[24]

To fall under a time-place-manner analysis, the challenged limitation must be a content-neutral restriction. Here, the March RECS apply to all new civil complaints without regard to their content. The parties agree that the March RECS are content neutral. Oral Argument Hr'g Tr. 15:10–12 (ECF No. 39) (counsel for the Plaintiffs conceding that "[t]here is nothing about the rules that is content based" and that

---

[24]     To be sure, the parties in *Pokaski* disputed whether the statute at issue permanently foreclosed public access altogether because it included a mechanism for later obtaining access to sealed records. 868 F.2d at 505. The court did not resolve the dispute because it concluded that the challenged provision did not pass constitutional scrutiny even if the court records could be obtained later. *Id.* In reaching this conclusion, it noted that automatically sealing records and forcing access-seekers to initiate a legal action "places on the public the burden of overcoming inertia," that in most cases the information would not be made available for "far longer than 48 hours," and that the statute imposes an economic burden on the press to the extent its reporters would need to obtain counsel to argue for disclosure. *Id.* at 507. None of those considerations are relevant to this case where complaints automatically become publicly available upon their entry in the electronic case file.

"they apply to all complaints in a blanket fashion"), 38:10–13 (Defendants' counsel agreeing that "[t]his is not a content-based rule.").

Because I conclude that the content-neutral March RECS most resemble time, place, and manner restrictions on the public right of access to newly filed civil complaints, I apply the more relaxed form of scrutiny. Under this intermediate standard, a restriction is constitutional if it is "narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication of the information." *March v. Mills*, 867 F.3d 46, 54 (1st Cir. 2017).

Applying this more flexible standard of scrutiny, it appears on the record before me that the March RECS are narrowly tailored to serve the interest of the state court in "the fair and orderly administration of justice." *See Planet III*, 947 F.3d at 596. As the state court implements its new electronic case management and filing system, these interests include ensuring compliance with court rules, minimizing the risk of harm to those involved in court proceedings, and protecting privacy in court records. The March RECS are narrowly tailored to these interests because they expressly provide for public access to civil complaints as soon as they are entered in the case file. Here, the March RECS outline the ministerial compliance review to be followed: ensure that the document is in proper electronic format, has been signed, lists the attorney's Maine bar number, and is accompanied by any legally required elements, such as a filing fee, registry recording fee, or summary sheet. *See* RECS Rule 2 March 2021 advisory note. This appears on its face to be a cursory review, no more extensive than what traditionally occurs when a litigant walks up to the clerk's office window

with a paper complaint to file. I find that the March RECS are narrowly drawn to achieve the state courts' significant interest in the orderly administration of justice.

Moreover, the March RECS leave open ample alternative channels for communication. They do not "deny or unwarrantedly abridge the opportunities for the communication of thought," *see Planet III*, 947 F.3d at 605–06 (Smith, J., concurring), because they expressly give the public and press access to newly filed complaints as soon as they are entered in the case file. Communication is abridged only during the ministerial review and entry process, and I have already determined that that process is warranted to protect the court's interests. *See id.* at 585 ("[C]ourts undeniably have an important administrative function that requires orderly processing of new filings, and this results in incidental delays to access by the press and public."); *see also Press-Enterprise I*, 464 U.S. at 512 ("[T]he constitutional values sought to be protected by holding open proceedings may be satisfied later by making a transcript of the closed proceedings available within a reasonable time.").[25]

The Plaintiffs' position is that anything short of immediate, on-receipt access violates their First Amendment rights. I disagree and so do most courts. The Ninth Circuit held that, although "a necessary corollary of the right to access is a right to timely access," that right does not entitle the press to "immediate, pre-processing access to newly filed complaints." *Planet III*, 947 F.3d at 594. As the *Planet III* court observed:

---

[25]      In addition, another alternative channel for obtaining information about newly filed civil complaints is currently available because the SJC's March 12, 2021 temporary standing order requires court clerks to give the public and the press paper copies of these complaints upon request at no charge.

> Even in this era of electronic filing systems, instantaneous public access to court filings, especially complaints, could impair the orderly filing and processing of cases with which clerk's offices are charged. After all, litigants are not uploading their complaints to the internet; they are filing them with a court, making them subject to judicial administration. The First Amendment does not require courts, public entities with limited resources, to set aside their judicial operational needs to satisfy the immediate demands of the press.

*Id.* at 596; *see id.* at 599–600 (determining that "overnight delay in access to complaints filed during the last ninety minutes of the court's public hours" did not violate the First Amendment).

Likewise, in *Schaefer*, the Fourth Circuit determined that time-place-manner scrutiny "does not require perfect or instantaneous access." 2021 WL 2583389, at *7. The Fourth Circuit did not require immediate access. *Id*. Instead it held that "the public and press generally have a *contemporaneous* right of access to court documents and proceedings when the right applies." *Id*. (internal quotation marks omitted). And "contemporaneous" means only "the same day on which the complaint is filed" when practicable, "and when not practicable, on the next court date." *Id*. (quoting *Schaefer*, 440 F. Supp. 3d at 562). The Fourth Circuit also recognized an exception to this "flexible standard" where "inconsequential deviations and extraordinary circumstances . . . may, without violating the constitution, delay access." *Id.* The *Schaefer* court thus held that the First Amendment right of access requires that courts "make newly filed civil complaints available as expeditiously as possible." *Id.* at *8.

The Plaintiffs' claims hinge on their allegations that the constitutional right to access newly filed civil complaints attaches upon receipt of the complaints and before

the clerk processes and enters the complaints into the electronic case file. Pls.' First Am. Compl. ¶¶ 2, 50; Intervenor-Pl.'s First Am. Compl. ¶¶ 2, 42. Under the Plaintiffs' theory, *any* delay between receipt and filing in the electronic case file infringes on their First Amendment rights. However, I conclude, as a matter of law, that although there is a First Amendment qualified right of timely access to newly filed civil complaints, there is no right of *instantaneous* access upon the court's receipt of new civil complaints.

As to the Plaintiffs' facial challenge, the March RECS are content neutral and are silent as to the amount of time that will elapse between receipt and entry into the publicly accessible electronic case file. That silence does not, however, as the Plaintiffs contend, make the March RECS unconstitutional on their face. To succeed in their facial attack, the Plaintiffs would have to establish (1) that "no set of circumstances exists" under which the March RECS would be valid, or (2) that the March RECS are overbroad by showing that "a substantial number of [their] applications are unconstitutional, judged in relation to the [March RECS]'s plainly legitimate sweep." *See United States v. Stevens*, 559 U.S. 460, 472–73 (2010) (internal quotations omitted). The Plaintiffs' pleadings fall short of these standards. First, they have not shown that no set of circumstances exists under which the March RECS would be valid. Under the March RECS, public access becomes available when the clerk enters the document in the electronic case file, and there are many ways that the March RECS could provide timely, "contemporaneous" access to newly filed

complaints such that they do not offend the First Amendment.[26] Second, the Plaintiffs fail to establish that the March RECS lack any plainly legitimate sweep. To the contrary, the state court's new rules are designed to support and promote public access, while balancing privacy concerns and the court's interests in orderly and efficient administration. Because the Plaintiffs have alleged nothing more than an indeterminate delay between the receipt of a complaint and the time it becomes accessible to the public, the Plaintiffs fail to state a claim upon which relief can be granted.

As to their as-applied challenge, the Amended Complaints assert that there have been delays in access, but the allegations all refer back to the period before the March RECS went into effect. The Amended Complaints fail to allege a single instance where access was delayed after March 15, 2021.[27] Taking all the Plaintiffs'

---

[26]     As the parties' own evidentiary submissions show, the March RECS are presently being applied in a manner that has not violated the Plaintiffs' contemporaneous right of access. After oral argument on their motion for preliminary injunction, the Courthouse News Service Plaintiffs provided their evidence of post-March 15 delays. Third Angione Decl. Nineteen new civil complaints were available on the same day that they were received by the court. Third Angione Decl. ¶ 6. Six complaints were not available to the public until the day after filing and one was not available until two days after filing. Third Angione Decl. ¶ 6. But the Defendants' response explains that the six next-day-available complaints were all filed either after the close of the court's business hours or within the last hour, and they were made publicly available within three court business hours. Third Glessner Decl. ¶ 6. And the one complaint that took two days to be made available through the court's electronic system was not a newly filed complaint, and it had been publicly available in paper form in the originating court months earlier.  Third Glessner Decl. ¶ 7. These instances show that, under the March RECS, the Plaintiffs are receiving timely, contemporaneous access to new complaints.

[27]     As noted in footnote 26, the parties submitted evidence in June of the extent of access delays after March 15, 2021. Because these facts were not alleged in their Amended Complaint nor presented on the Defendants' motion to dismiss, I do not consider them in my analysis under Rule 12(b)(6). *See Foley v. Wells Fargo Bank, N A.*, 772 F.3d 63, 72 (1st Cir. 2014) ("[C]ourts [reviewing a Rule 12(b)(6) motion] usually consider only the complaint, documents attached to it, and documents expressly incorporated into it"). Even if I were to consider this evidence, the asserted delays do not violate the Plaintiffs' right of contemporaneous access to court records.

well-pleaded facts as true, and drawing all reasonable inferences in their favor, I conclude that the Amended Complaints fail to state a claim for an as-applied challenge.

Because the Amended Complaints fail to state a claim upon which relief may be granted, the Defendant's Motion to Dismiss is granted.

## II.   The Plaintiffs' Motion for Preliminary Injunction

Having determined that the Amended Complaints must be dismissed under Rule 12(b)(6), the Plaintiffs' motions for preliminary injunction also must fail.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendants' motions to dismiss and **DENIES** as moot the Plaintiffs' motions for a preliminary injunction.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 16th day of July, 2021.